

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-16-2007

# Rrjolli v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2006

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Rrjolli v. Atty Gen USA" (2007). *2007 Decisions*. Paper 582.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/582

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2006
_____


FLORION RRJOLLI,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.


_____


On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A97-976-401)
Immigration Judge: Daniel Meisner
_____


Submitted Under Third Circuit L.A.R. 34.1(a)
June 28, 2007

BEFORE: BARRY, FUENTES, and GARTH, Circuit Judges.
(Filed: August 16, 2007)




_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge.

Petitioner Florion Rrjolli, an Albanian citizen born in 1971, entered the United States in October 2003. In December 2003, he applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture. After a hearing, an immigration judge ("IJ") denied relief, and the Board of Immigration Appeals ("BIA") affirmed. Rrjolli filed a timely petition for review. We have jurisdiction under 8 U.S.C. § 1252, and we will deny the petition for the reasons that follow.

**I.**

In his application and at his hearing before the IJ, Rrjolli testified to the following facts. As a member of the Albanian Democratic Party, to which his father and brother also belonged, Rrjolli attended a demonstration against Communist political victories in April 1991 and was hit in the finger by a bullet when the police fired into the crowd. Soon thereafter, he left for Greece, where he stayed until he was deported in April 2000. He returned to Albania, moving to Shkoder to live with his aunt and uncle, and again became involved in Democratic Party activities.

In September 2000, not long before local elections, Rrjolli spoke at a meeting organized by the Democratic Party. According to Rrjolli, police apprehended him on his way home, detained him for a night, and beat him with rubber batons. In May 2001, some men in a café harassed and punched Rrjolli after hearing him disparage the Socialist Party. In June 2001, while on his way to vote in parliamentary elections, Rrjolli was stopped by secret service agents and members of the Socialist Party who threatened him

2

with harm if he did not vote for Socialist Party candidates. Rrjolli also stated more generally that he often received anonymous threatening phone calls.

Finally, Rrjolli testified that in August 2003, police officers stopped him as he was leaving Democratic Party offices, handcuffed him, and took him to the police station. They placed him in a room where he was handcuffed to a wooden chair. The chief of police entered and while questioning him about his political activities, struck him in the back with another chair, causing him to fall to the ground. The police also punched and kicked him, and struck him with batons. At some point, he lost consciousness and was revived when police threw water on his face. He was placed in a cell for the evening, and again beaten the following day. Before being released, the police told him to cease his political involvement and threatened to kill him.

As a result of the beatings, Rrjolli bled from the ears and nose, and his face was black and blue. He returned home and his family called a doctor who treated him and then advised him to go to the hospital. Rrjolli, however, was afraid to leave his home. He left Albania two and a half weeks later, leaving behind his wife and infant son.

Rrjolli also provided other information and materials in support of his application. He stated that this parents were granted asylum in the United States because his father had been persecuted by the Socialist Party. Rrjolli submitted affidavits from his parents, brother, and sister (all of whom live in the United States), letters from the Democratic Party and Albanian Anticommunist Political Association verifying his membership and involvement, and a medical report from the doctor who treated him in August 2003.

3

The IJ denied his application for relief, finding that much of his story was either exaggerated or not credible. The IJ was skeptical that he was beaten or injured in September 2000 when police detained him. Further, the IJ did not believe that the August 2003 incident occurred, noting, among other things, (1) that it was an "unusual coincidence" that Rrjolli obtained an Albanian passport a week before the alleged incident in August 2003; (2) that the medical report was not authenticated; (3) that a U.S. State Department report, which suggested that political violence had declined, was not consistent with his claims; and (4) that Rrjolli was not a leader in the Democratic Party and had not offered a persuasive explanation for why he would be targeted by police. In addition, with regard to both the September 2000 and August 2003 incidents, the IJ determined that Rrjolli had failed to properly corroborate his claims. Following an appeal, the BIA adopted and affirmed the IJ's opinion.

## II.

We review the decision of the IJ because the BIA adopted it. See Sukwanputra v. Gonzales, 434 F.3d 627, 631 (3d Cir. 2006). We review the IJ's findings, including adverse credibility determinations, under the substantial evidence standard. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). "If a reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence." Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003). The IJ's findings "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).

4

The IJ concluded that even if Rrjolli was detained for an evening in September 2000, he did not provide credible evidence that he had been beaten or injured by the police. Further, the IJ did not believe that the August 2003 detention and beating occurred. We have reviewed Rrjolli's various arguments with respect to the IJ's credibility determinations and find them ultimately unpersuasive. We have previously noted that "an IJ is normally in the best position to make credibility determinations as he is uniquely qualified to decide whether an alien's testimony has about it the ring of truth." Chen v. Gonzales, 434 F.3d 212, 220-21 (3d Cir. 2005) (internal quotation marks omitted). Substantial evidence supports the IJ's adverse credibility findings and we are not compelled to reach a contrary conclusion.

The IJ cited to a number of specific factors in reaching his conclusion that Rrjolli had not testified credibly. For example, he noted that the documentary evidence did not support Rrjolli's claims. The letter from the Anticommunist Political Association described Rrjolli's involvement in the 1991 demonstration, but made no specific references to the September 2000 or August 2003 incidents. Rrjolli also failed to submit affidavits or letters from others living in Albania to support his claims, including his aunt and cousin who supposedly helped him after the August 2003 beating. The affidavits he did submit from his parents, brother, and sister merely recount what Rrjolli told them regarding the September 2000 and August 2003 incidents.

In addition, the IJ noted that Rrjolli was not a leader in the Democratic Party and wondered why he would be targeted. Rrjolli's response that the police persecuted many

5

activists in the Democratic Party is not supported by the evidence in the record, such as the U.S. State Department reports. One of the reports, for example, states that "there are no indications that the Socialist Party, either through its own organization or through Government authorities, is engaged in a pattern of repression or violent behavior against its opponents." App. 264.

We also believe substantial evidence supports the IJ's determination that once one discounts Rrjolli's claims that he was beaten in September 2000 or August 2003, the other incidents he described do not rise to the level of past persecution. See Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993) (stating that persecution "include[s] threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom"). The question of whether Rrjolli has a well-founded fear is a closer one. Based on events the IJ did find credible, Rrjolli was detained for an evening in 2000, threatened on various occasions, and harassed for his political activities. We are not, however, compelled to disagree with the IJ, especially in light of the U.S. State Department reports which describe improving political relations and which do not cite instances of Democratic Party members being singled out for persecution.

For these same reasons, substantial evidence supports the IJ's denial of withholding of removal; in other words, Rrjolli has not demonstrated a "clear probability" of persecution if removed. See INS v. Stevic, 467 U.S. 407, 413, 425 (1984). Finally, Rrjolli does not qualify for protection under the Convention Against Torture because he has not shown that it is more likely than not that he will be tortured if removed. See

6

Obale v. Attorney General, 453 F.3d 151, 161 (3d Cir. 2006).

### III.

Rrjolli has failed to demonstrate that the IJ or BIA erred in rejecting his application for asylum, withholding of removal, and relief under the Convention Against Torture. For the reasons discussed above, we will deny the petition.[1]

---

[1] We note, as the IJ did, that Rrjolli's desire to live with his family in the United States is understandable and that he soon may be able to qualify for an immigrant visa.